IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TROOPER SHANTA FELDER <br>     Plaintiff <br> v <br> COMMONWEALTH OF PENNSYLVANIA <br> PENNSYLVANIA STATE POLICE <br>     Defendant | Civil Action No.: |

## COMPLAINT AND JURY TRIAL DEMAND

### I. INTRODUCTION

1. Plaintiff, Trooper Shanta Felder, claims damages and equitable relief against Defendant and upon her causes of action, avers as follows:

2. This action for monetary damages and other appropriate relief is brought by Plaintiff to redress violations of Plaintiff's rights under federal law and state statutory law by the Defendant.

3. This action arises under the Civil Rights Act, 42 U.S.C. Section 2000e et seq., (Title VII), and the Pennsylvania Human Relations Act, ("PHRA"), which prohibit racial harassment, race discrimination and retaliation by an employer against an employee for engaging in protected activity under the statutes, and is brought by Plaintiff to redress race discriminatory and retaliatory actions by the Defendant against Plaintiff.

### II. JURISDICTION, VENUE AND PARTIES

4. The jurisdiction of this Court is invoked pursuant to Title 28 U.S.C. 1331, which provides for the original jurisdiction of Plaintiff's claims arising under the laws of the United States of America. Plaintiff has also exhausted her administrative remedies under these statutes before filing this civil action. It has been over one year since Plaintiff dual filed her administrative complaint with the PHRC, and on January 10, 2020, The United

1

States Justice Department, Civil Rights Division mailed a right to sue letter to Plaintiff permitting her to take her Title VII claims to Court. See attached. The court also has supplemental jurisdiction over the state law claims.

5. The venue of this Court is proper pursuant to the dictates of Title 28 U.S.C. 1391(c) because all the acts and or omissions giving rise to the claims set forth herein took place in this judicial district.

6. Plaintiff is an adult individual, and belongs to protected classes under Title VII. Plaintiff is African American by race and female by gender. Plaintiff resides in Philadelphia, Pennsylvania.

7. Defendant, Commonwealth of Pennsylvania, Pennsylvania State Police, with offices located at 1342 W. Baltimore Pike, Media, PA 19063, is the state police force of Pennsylvania, responsible for law enforcement statewide, and at all times material to this action, was Plaintiff's employer as defined by Title VII and the PHRA.

8. At all times relevant to the claims asserted in this case, Defendant acted by and through its agents, officers, supervisors and employees, each of whom were acting within the scope of their employment with Defendant.

## III.  **BRIEF STATEMENT OF FACTS**

9. Plaintiff started working for Defendant on or about November 19, 2005, as a P/T Clerk, assigned to Skippack Barrack for six months, and then Belmont Station for about 8 years.

10. Plaintiff moved to a permanent position as PFA Clerk at Belmont Station in or about 2008.

11. On or about August 5, 2013, Plaintiff went into the academy as a Cadet, in Harrisburg. She was the only black female Cadet in her class; Class 137.

2

12. While in this class, Plaintiff was singled out, belittled and harassed. Rules were changed for her class. The previous class, Class 136, had two Caucasian females and was allowed to stay three months after their class graduated because they couldn't pass their final test. But, because Defendant assumed Plaintiff would not pass her test, Defendant changed the rule so that no one would be allowed to stay after graduation if they did not pass the final test the first time. But for the Class of 138, Caucasian Cadets were allowed to stay if they did not pass the final test before graduation.

13. On February 7, 2014, Plaintiff became a State Trooper, working out of Troop K, Media Barracks. Plaintiff was the only black female Trooper at Media Barracks.

14. On getting to the Media Barracks, Plaintiff was assigned to three coaches; Trooper Frank Pawloski (w/m) for the 1st thirty (30) days and then Trooper Brian Maturo (w/m) for the next thirty (30) days. These Troopers were not properly training Plaintiff; they were treating Plaintiff like a partner, while Plaintiff was supposed to be in training learning basic practices.

15. A 3rd coach was Trooper James Lark b/m. Plaintiff's experience with Trooper Lark was completely different from her experience with Troopers Maturo and Pawloski.

16. Plaintiff was later assigned and completed probation with no problem.

17. In or about March 2016, Plaintiff was subjected to a racially motivated investigation.

18. Plaintiff was told that she was being investigated because of a picture she posted on her private instagram account, where Plaintiff was in full uniform.

19. Yet, Caucasian Troopers who posted several private pictures, some in uniform and others in bikinis and swimming outfits, were not subjected to the same excessive monitoring and investigation as Plaintiff was.

20. The investigation started with the viewing of one picture that Plaintiff took in full uniform in the office.

21. During the investigation in or about March 2016, at an interview by Cpl. Michaelann Andrusiak (now Lt.) and Sgt. Genard McShea (now Lt.), Plaintiff was belittled, harassed and interrogated. Plaintiff was told her conduct was unbecoming a State Trooper because Plaintiff posted pictures on Instagram in a two-piece swim suit while on vacation.

22. Cpl. Andrusiak (w/f) said to Plaintiff, "Because we are big breasted girls, we can't wear everything".

23. Plaintiff was berated for posting pictures in her social media account, wearing swim suits.

24. Plaintiff was offended by Cpl. Andrusiak's sexual comments about her breast, which Plaintiff also found to be racially motivated because Caucasian female Troopers post their pictures on social media wearing bikinis and swim suit outfits, but were not subjected to this type of humiliating investigation and sexual comments.

25. Immediately after the March 2016 hearing, when the sexist comment was made to Plaintiff, Plaintiff complained to Sgt. Michael Gaines (b/m) (now Lt.), and her PST Representative, Trooper Charles Bailey (b/m) (now Cpl.) that she felt Cpl. Andrusiak's comments were sexists, harassing and belittling because of her gender. Plaintiff told Sgt. Gaines that she found the comment and conduct of Cpl Andrusiak and the conduct of Sgt. McShea (w/m), spreading her instagram pictures where Plaintiff was in a bikini on vacation on a table to be sexist, harassing, belittling and racially motivated.

26. Plaintiff was issued a 5-day suspension for this racially discriminated incident.

27. Also, on July 6, 2016, Plaintiff received an email denying her overtime, even though overtime was given on a first come first get basis. Trooper Timothy Yatez told Plaintiff that he was told to stop selecting Plaintiff for overtime shift.

28. On September 20, 2016, Plaintiff attended a grievance hearing for the 5-day suspension.

29. On October 11, 2016, after the grievance hearing, Plaintiff again complained to Sgt. Gaines about the hostile work environment and harassment she was being subjected to. The same day, Sgt. Gaines told Lt. James Hennigan about Plaintiff's complaint, that Plaintiff was being overly documented.

30. Next day, Plaintiff talked to Lt. Hennigan, about all that was going on and the sexists and racially motivated comments made by Cpl. Andrusiak and Sgt. McShea. Lt. Hennigan said that he would address all the Corporals and Sergeants personally in a meeting. After this complaint Plaintiff started receiving write-ups from the Corporals and Sergeants.

31. In November 2016, Plaintiff's grievance was sustained and the 5-day suspension was ruled unwarranted but Plaintiff was issued a written notation for taking a picture in the building. The hearing outlined numerous PSP members, raking from Trooper to Captain, who did not follow normal protocol while handling Plaintiff's incident in an effort to find her guilty of something that was not against PSP rules.

32. From that day forward, Plaintiff was subjected to a retaliatory hostile work environment and unwarranted write-ups for minor incidents that Caucasian Troopers were not issued write-ups for. Plaintiff was placed on unwarranted Early Intervention Program for incidents that Caucasian Troopers were not issued Early Intervention Program for. These all happened after Plaintiff complained to the Command about the discriminatory

comments by Cpl. Andrusiak and the discriminatory investigation for posting pictures on my instagram account.

33. Yet, Caucasian Troopers post pictures taken inside the building and posted these pictures on social media, but were not issued disciplines.

34. As a result, Plaintiff submitted a request to transfer out of Media Barracks to Philadelphia.

35. Plaintiff contacted Defendant's EEO Manager and attempted to file EEO Complaint regarding this matter, but no remedial action was taken by Defendant.

36. Plaintiff allege that she was subjected to a hostile work environment and disciplinary write-ups and Early Intervention Program in part based on Defendant's retaliatory motives for Plaintiff's previous protected activities under the PHRA, Title VII.

37. On March 31, 2017, Plaintiff dual filed a Complaint of race and gender discrimination and retaliation against Defendant with the PHRC and EEOC.

38. In March 2017, after months of requesting to be transferred to Philadelphia Barracks, Plaintiff was allowed to be transferred by a new Captain, Cpt. Bruce Williams (b/m). When Cpt. Williams inquired about Plaintiff's transfer requested entered few months back, Lt. Hennigan to him that Plaintiff was "a problem", that Plaintiff was on EIP, and they needed to keep an eye on Plaintiff. Cpt. Williams disagreed with Lt. Hennigan's contention and granted Plaintiff's transfer request.

39. Shortly after Plaintiff transferred to Philadelphia Barracks, she was removed from the EIP by Cpt. Williams because she should not have been placed on EIP.

40. On June 26, 2017 Defendant filed its Answer to Plaintiff's original complaint with the PHRC.

41. Subsequent to Plaintiff's original PHRC complaint, Respondent has continued to subject Plaintiff to retaliatory harassment and hostile work environment and retaliatory negative performance reviews and false accusations, retaliatory harassment, retaliatory hostile work environment and retaliatory disciplinary write-ups and Early Intervention Program in part based on Defendant's retaliatory motives for Plaintiff's previous protected activities under the PHRA, and Title VII.

42. Plaintiff started in Media in or about February of 2014. During her time there, Plaintiff was constantly subjected to discriminatory treatment because of her race (African American) and gender (female).

43. For example, during Plaintiff's coach/pupil period towards the beginning of her career as a State Trooper, Plaintiff was criticized for the way her voice sounds, and was told that she needed a "stronger command presence." This was a sexist remark Plaintiff was subjected to. Plaintiff never observed a male trooper being criticized for the way his voice sounds. It was obvious that this comment was directed towards Plaintiff due to her gender.

44. As the only Black female trooper during her time in Media, Plaintiff was also regularly admonished and was issued discipline for actions which Caucasian males engaged in (or engaged in even more serious conduct) yet they were not disciplined.

45. On one occasion, Plaintiff's request for overtime, which was clearly necessitated by the incident Plaintiff was handling, was inexplicably denied. However, when a Caucasian male trooper in a similar situation requested overtime, his request was quickly granted without any issues.

46. On another occasion, Plaintiff was issued written discipline for being approximately eight (8) minutes late (as Plaintiff was stuck in traffic and had called prior to the start of her shift to notify Defendant that she might be late). Approximately one (1) week later, a Caucasian male trooper was approximately 30 minutes late, yet he was not issued any discipline.

47. The majority (if not all) of the troopers had late reports. The typical protocol for Caucasian male troopers was that their corporals would just put a Post-It note on their files, as a reminder. Such notes are not permanently documented. However, Plaintiff was been issued supervisor notations for having late reports, which became part of Plaintiff's permanent file.

48. Moreover, Plaintiff was issued written discipline for not timely turning in certain evidence to the crime lab, while, a Caucasian male Trooper, Martin Wiley, Jr. (now Cpl.), had evidence sitting on his desk for over one (1) month which he failed to submit to the crime lab, but he was not disciplined.

49. The above are just some of the examples of the discriminatory treatment Plaintiff regularly endured. Plaintiff also had her reports overly scrutinized (more so than Caucasian male troopers) and was consistently held to different standards than her Caucasian male counterparts.

50. Because the work environment and culture became so toxic for Plaintiff – because of her race and gender – Plaintiff complained to Lt. James Hennigan on more than one occasion, concerning this hostile work environment.

51. Lt. Hennigan did not conduct any investigation into Plaintiff's concerns, nor did he do anything about Plaintiff's complaints. Instead, he began to retaliate against Plaintiff. For

example, Hennigan referred Plaintiff to Defendant's EIP program, which was designed to address troopers who were considered in some sort of danger of acting inappropriately. This was clearly not a proper response to Plaintiff's complaints of discrimination and harassment.

52. Because Hennigan did not address Plaintiff's complaints and the situation began to deteriorate even further, Plaintiff requested a transfer to the Philadelphia barracks. Defendant ignored Plaintiff's request for quite some time, until Captain Williams stepped in and granted Plaintiff's transfer to Philadelphia (in or about the March 2017 timeframe).

53. Discrimination against minority female troopers was carried out by many in the Media barracks, as the Caucasian males tended to gang-up on them. This was unfortunately the work environment that Plaintiff was subjected to, as was Ms. Flores and Laura Boyd (after it became known that she was pregnant and her partner was African American).

54. Many Caucasian males have made errors with reports, court filings and other matters of procedure, yet they were not disciplined or terminated – let alone accused of "falsifying" reports or alleged "insubordination."

55. On or about May 20, 2018, while in court Caucasian male Troopers joked about having 30 plus overdue reports.

56. Yet, on May 21, 2018, Plaintiff received a write-up by Sgt. Charles Burckhardt (w/m).

57. On September 17, 2018, Plaintiff received another write-up by Sgt. Burckhardt.

58. Cpt. Williams had a meeting with Sgt. Burckhardt regarding Plaintiff's complaint about the write-ups, and Sgt. Burckhardt was warned about singling Plaintiff out for write-ups and that he should hold all Troopers to the same standard.

59. In November 2018, Cpt. Williams was transferred to Harrisburg station based on false allegations made against him by a Caucasian female trooper.

60. Less than two weeks after Cpt. Williams was transferred out of Philadelphia Barracks, Sgt. Burckhardt and Acting Cpt., Lt. Hennigan arbitrarily placed Plaintiff back on EIP on November 15, 2018.

61. On or about November 28, 20, Plaintiff filed internal EEO complaint of discrimination and retaliation with Defendant.

62. On November 30, 2018, Plaintiff was informed by Cpl. Raymond Shaw that he was told by Cpl. McShea that since Plaintiff was placed on EIP she was no longer allowed to handle canteen duties at PSP Belmont.

## IV.   STATEMENT OF CLAIM
## COUNT ONE- TITLE VII VIOLATION-RACE DISCRIMINATION

63. Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 62 above as if same were fully set forth at length herein.

64. The acts and conduct of Defendant though its agents, officers, employees, and officials as stated above where Plaintiff was subjected to race discriminatory actions with regards to employment opportunities, racially hostile work environment and harassment on the basis of race were violations of Title VII.

65. Plaintiff was persistently issued negative GI reports, pretextual Action Plans, selectively referred to the IAD for investigation and issued unwarranted disciplinary actions.

66. As a direct result of the said racially discriminatory practices of Defendant in violation of Title VII, Plaintiff has sustained loss wages, consequential damages, compensatory damages, emotional injuries, mental anguish, emotional distress, humiliation, and damage to reputation.

## COUNT TWO- TITLE VII VIOLATION-RETALIATION

67. Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 66 above as if same were fully set forth at length herein.
68. The acts and conduct of Defendant though its agents, officers, employees, and officials as stated above where Plaintiff was subjected to retaliatory actions after engaging in protected activities was a violation of Title VII.
69. Plaintiff was persistently issued negative GI reports, pretextual Action Plans, selectively referred to the IAD for investigation and issued unwarranted disciplinary actions.
70. As a direct result of the said retaliatory practices of Defendant in violation of Title VII, Plaintiff has sustained loss wages, consequential damages, compensatory damages, emotional injuries, mental anguish, emotional distress, humiliation, and damage to reputation.

## COUNT THREE –PHRA VIOLATION –RACE DISCRIMINATION

71. Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 70 above as if same were fully set forth at length herein.
72. The acts and conducts of Defendant through its respective agents, officers, employees, and officials as stated above where Plaintiff was subjected discriminatory actions because of her race, are violations of the PHRA.

73. Plaintiff was persistently issued negative GI reports, pretextual Action Plans, selectively referred to the IAD for investigation and issued unwarranted disciplinary actions.

74. As a direct result of the said discriminatory practices of the Defendant in violation of the PHRA, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, interest due therein as well as mental anguish, emotional distress, humiliation and damage to reputation.

## COUNT FOUR –PHRA VIOLATIONS-RETALIATION

75. Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 74 above as if same were fully set forth at length herein.

76. The acts and conducts of the Defendant through its agents, officers, officials and employees as stated above where Plaintiff was subjected to adverse employment actions because she engaged in protected activities under the statute are violations of the PHRA.

77. Plaintiff was persistently issued negative GI reports, pretextual Action Plans, selectively referred to the IAD for investigation and issued unwarranted disciplinary actions.

78. As a direct result of said retaliatory practices of the Defendant, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, interest due therein as well as mental anguish, emotional distress, humiliation, and damages to her reputation.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully demands judgment against Defendant and request that this Honorable Court:

A.   Enter judgment against Defendant for back pay, compensatory damages, consequential damages, cost of suit, attorneys' fees and expert witness fees as permitted by law; and

B.   Award such other relief, as the Court may deem necessary and just, including but not limited to an Order to make whole and an order prohibiting Defendant from continuing to maintain its illegal policy, practice or custom of race discrimination and retaliation against employees and to promulgate an effective policy against such unlawful acts.

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all questions of fact raised by this complaint.

Olugbenga O. Abiona, Esquire<br>
ABIONA LAW, PLLC<br>
121 South Broad Street, Suite 1200<br>
Philadelphia, PA 19107<br>
(215) 625-0330<br>
Attorney ID. #57026<br>
Attorney for Plaintiff

Dated: February 18, 2020



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7018 1830 0000 1244 8140

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

January 10, 2020

Ms. Shanta Felder
c/o Olugbenga O. Abiona, Esquire
Abiona Law
The North American Building
121 South Broad St., Ste. 1200
Philadelphia, PA 19107

Re: EEOC Charge Against Pennsylvania State Police
No. 17F201760680

Dear Ms. Felder:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Philadelphia District Office, Philadelphia, PA.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Eric S. Dreiband
Assistant Attorney General
Civil Rights Division

by Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Philadelphia District Office, EEOC
Pennsylvania State Police

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Trooper Shanta Felder

**DEFENDANTS**
Commonwealth of Pennsylvania, PSP

**(b)** County of Residence of First Listed Plaintiff  Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Olugbenga O. Abiona, ABIONA LAW PLLC
121 South Broad Street, Ste 1200, Phila., PA 19107, 2156250330

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 2000 et seq.
Brief description of cause:
Race discrimination and retaliation in violation of the Civil Rights Act

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE

DOCKET NUMBER

DATE  02/18/2020

SIGNATURE OF ATTORNEY OF RECORD

FEB 19 2020

**FOR OFFICE USE ONLY**

RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE

AB

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

20-898

# DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: Philadelphia, PA

Address of Defendant: 1342 W. Baltimore Pike, Media, PA 19063

Place of Accident, Incident or Transaction: Media and Philadelphia, PA

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ✔
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ✔
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ✔
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ✔

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above

DATE: 02/18/2020

Attorney-at-Law / Pro Se Plaintiff

57026
Attorney ID # (if applicable)

---

**CIVIL:** (Place a √ in one category only)

A. **Federal Question Cases:**
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ✔ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    *(Please specify)*

B. **Diversity Jurisdiction Cases:**
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify)*
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
   *(Please specify)*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Olugbenga O. Abiona, Esquire, counsel of record or pro se plaintiff, do hereby certify

☐ Pursuant to Local Civil Rule 53 2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs

✔ Relief other than monetary damages is sought

FEB 19 2020

DATE: 02/18/2020

Sign here if applicable
Attorney-at-Law / Pro Se Plaintiff

57026
Attorney ID # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F R C P 38

Civ 609 (5/2018)



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Trooper Shanta Felder | : | CIVIL ACTION |
| v. | : | |
| Commonwealth of Pennsylvania, PSP | : | NO. 20-898 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security - Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management - Cases that do not fall into any one of the other tracks. (X)

| 2/18/2020 | Olugbenga O. Abiona, Esquire | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 2156250330 | 2156250159 | oluesq@aol.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

FEB 19 2020